# EXHIBIT A

MARGULIES WIND, PA
Harborside Financial Center
3 Second Street
Plaza 10, Suite 1201
Jersey City, New Jersey 07311-3988
(201)-333-0400
Attorneys for Plaintiff

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION : HUDSON COUNTY

MARSHALL SCHROEDER,

    Plaintiff,

v.

WELSBACH ELECTRIC
CORPORATION,

    Defendant.

DOCKET NO. L-2492-09

Civil Action

SUMMONS

From the State of New Jersey

To the Defendant named above:    WELSBACH ELECTRIC COMPANY
c/o Registered Agent: The Prentice-Hall Corporation

    The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The Amended Complaint attached to this Summons states the basis for this lawsuit. If you dispute this Amended Complaint, you or your attorney must file a written Answer or Motion and Proof of Service with the Deputy Clerk of the Superior Court in the county listed above within 35 days from the date you received this Summons, not counting the date you received it. (The address of each Deputy Clerk of the Superior Court is provided). If the Amended Complaint is one in foreclosure, then you must file your written Answer or Motion and Proof of Service with the Clerk of the Superior Court, Hughes Justice Complex, CN-971, Trenton, New Jersey, 08625. A filing fee*

payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the Deputy Clerk of the Superior Court) must accompany your Answer or Motion when it is filed. You must also send a copy of your Answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written Answer or Motion (with fee and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written Answer or Motion within 35 days, the court may enter a Judgment against you for the relief plaintiff demands, plus interest and costs of suit. If Judgment is entered against you the Sheriff may seize your money, wages or property to pay all or part of the Judgment.

If you cannot afford to pay an attorney, you may call the Legal Services Office in the county where you live. A list of these offices is provided. If you do not have an attorney and are eligible for free legal assistance, may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Dated: June 25, 2009

BARBARA A. NETCHERT, CLERK

Name of defendant to be served: **WELSBACH ELECTRIC COMPANY**
Address for service: c/o Registered Agent
The Prentice-Hall Corporation
830 Bear Tavern Rd.
West Trenton, NJ 08628-0000

$135.00 FOR CHANCERY AND LAW DIVISION CASES.

- 2 -

***Deputy Clerks Addresses***
Atlantic County, 1201 Bacharach Blvd., Atlantic City, NJ 08330
Bergen County Justice Center, 10 Main Street, Hackensack, NJ 07601
Burlington County Courts Facility, 49 Rancocas Rd., Mt. Holly, NJ 08060
Camden County Hall of Justice, 101 S. 5th St., Camden, NJ 08103-4001
Cape May County Cthse., 9 N. Main St., Box DN-209-A, Cape May Court House, NJ 08210
Cumberland County Court House, Broad & Fayette St., Bridgeton, NJ 08302
Essex County Cty. Cts. Bldg., 50 W. Market St., Newark, NJ 07102
Gloucester County Court House, 1 N. Broad St., Woodbury, NJ 08096
Hudson County Admin. Bldg., 595 Newark Ave., Jersey City, NJ 07306
Hunterdon County Court House, Main Street, Flemington, NJ 08822
Mercer County Court House, P.O. Box 8068, Trenton, NJ 08650-0068
Middlesex County Court House, 1 Kennedy Sq., New Brunswick, NJ 08903
Monmouth County Court House, 71 Monument Park, Freehold, NJ 07728
Morris County Court House, P.O. Box 900, Morristown, NJ 07963-0900
Ocean County Court House, 118 Washington St., Toms River, NJ 08754
Passaic County Administration Building, 401 Grand Street, Paterson, NJ 07505
Salem County Court House, 92 Market St., Salem, NJ 08079
Somerset County Court House, P.O. Box 3000, Somerville, NJ 08876-1262
Sussex County Court House, 43-47 High St., Newton, NJ 07860
Union County Court House, 2 Broad St., Elizabeth, NJ 07207
Warren County Courthouse, 2nd & Hardwick St, Belvidere, NJ 07823

|  | LEGAL AID OFFICES | LAWYER REFERRAL OFFICES |
|---|---|---|
| Atlantic County | (609) 348-4200 | (609) 345-3444 |
| Bergen County | (201) 487-2166 | (201) 488-0044 or 692-1011 |
| Burlington County | (609) 261-1088 | (609) 261-4862 |
| Camden County | (609) 964-1002 | (609) 964-4520 |
| Cape May County | (609) 465-3001 | (609) 463-0313 |
| Cumberland County | (609) 692-2400 | (609) 692-6207 |
| Essex County | (973) 622-1513 | (973) 622-6207 |
| Gloucester County | (609) 848-5360 | (609) 848-4589 |
| Hudson County | (201) 792-6363 | (201) 798-2727 |
| Hunterdon County | (908) 782-7979 | (908) 735-2611 |
| Mercer County | (609) 695-6249 | (609) 890-6200 |
| Middlesex County | (732) 249-7600 | (732) 828-0053 |
| Monmouth County | (732) 747-7400 | (732) 431-5544 |
| Morris County | (973) 285-6911 | (973) 257-5882 |
| Ocean County | (732) 341-2727 | (732) 240-3666 |
| Passaic County | (973) 345-7171 | (973) 278-9223 |
| Salem County | (609) 451-0003 | (609) 678-8363 |
| Somerset County | (908) 231-0840 | (908) 685-2323 |
| Sussex County | (973) 383-7400 | (973) 267-5882 |
| Union County | (908) 527-4769 | (908) 353-4715 |
| Warren County | (908) 475-2010 | (908) 267-5882 |



FILED
TEAM

JUN 15 2009

SUPERIOR CT. OF NEW JERSEY
COUNTY OF HUDSON

| | |
|---|---|
| MARSHALL SCHROEDER | : SUPERIOR COURT OF NEW JERSEY |
| | : LAW DIVISION: HUDSON COUNTY |
| Plaintiff, | : DOCKET NO. L-2492-09 |
| v. | : Civil Action |
| WELSBACH ELECTRIC CORPORATION, | : COMPLAINT AND JURY DEMAND |
| Defendant, | |

Amended petition, claim and complaint under authority of N.J.S.A. 34:19-1 et seq. (C.E.P.A.).

Plaintiff, Marshall Schroeder, residing at 39 Hemlock Lane, Shawnee on Delaware, PA., 18356, mailing address P.O. Box 185, Shawnee on Delaware, PA. 18356, complaining against Defendant, Welsbach Electric Corporation ("Defendant" or "Welsbach"), alleges and states the following:

Facts common to all counts

The Parties

1.  Schroeder is a former employee of Welsbach. Schroeder is also a well-established electrician and member in good standing of the International Brotherhood of Electrical Workers, Local Union 164, (hereafter "Union" or "Local 164").

2.  Welsbach is an electrical subcontractor and a Delaware corporation, which is authorized to conduct business in the State of New Jersey. Based upon information obtained from various sources, Welsbach has a principle place of business at 111-01 14th Ave, P.O. Box 560252

1

College Point, New York, 11356, and a field office located at 100 Amity Street, Jersey City, NJ., 07304.

3. On Oct 9th, 2007, Schroeder began work for Welsbach, working on a project, (PATH 800 Megahertz Project) run by Tishman Construction ("Tishman"), General Contractor, to install new electrical conduits in the PATH tunnels in New Jersey. Schroeder obtained this position through Local 164's hiring hall.

4. Prior to working for Welsbach, Schroeder had worked for Dadione Electric ("Dadione") repairing the PATH tunnel from New Jersey to the New York border, after the tragedy on September 11, 2001. Through Schroeder's work with Dadione, Plaintiff became familiar with the established safety standards and inherent hazards associated with working in these tunnels.

5. Schroeder was attracted to the position with Welsbach because it was known to be a long term project that would last well over a year. Schroeder, therefore, accepted the position with Welsbach and passed on other opportunities, which had the possibility of considerable overtime.

<u>Welsbach Harassed, Created a Hostile Working Environment, Threatened To Terminate and then Retaliates Against Plaintiff Because of Schroeder's Complaints About the Hazardous Conditions on the job and Welsbach's reluctance and unwillingness to provide a safe work environment by demotion and later job termination.</u>

6. At all times, Schroeder was acutely aware that his job with Welsbach would require close contact to approximately one inch of thick, black, dry, magnetic dust, with the consistency of talcum powder. He was also informed that he would be drilling overhead into the tunnel and then manually driving anchor bolts into the ceiling which would result in this unidentified material falling directly into his face and eyes while becoming airborne.

7. Shockingly, on Schroeder's first day on the job, Welsbach handed out paper dust masks to the workers, instead of providing proper full face respirators with cartridges. The workers were forced to work under these hazardous conditions while being told daily not to ask for any

additional protection or it could result in job termination. Schroeder raised concern over the possible exposure to asbestos, lead, metallic dust, and the diesel fumes created by the generator that would run on the train during the entire shift to power our equipment.

8. When Welsbach finally did, reluctantly, provide the workers with half face respirators, they failed to provide the workers with a fit test as required by law. It was not until some six months later, on April 14, 2008, that workers received a fit test and blood test. Most of the dirtiest work had already been performed by that time.

9. Additionally, Welsbach initially failed to provide any type of suit or gloves to cover clothing or exposed body parts to the unknown material. Only after repeated requests, while enduring threats being made by Welsbach for our persisting on the matter, did we receive suits and gloves.

10. Schroeder immediately informed Mr. William Kennedy, Welsbach's night foreman, that the distributed equipment was inadequate and did not properly protect the workers. Schroeder also informed Welsbach that he would work under the unsafe conditions for the first day, but he required that Welsbach have the appropriate equipment on the following day.

11. Nevertheless, on Schroeder's second day of work, Welsbach still did not distribute any additional protective equipment.

12. It was not until Schroeder's fifth day on the job that Welsbach finally distributed Tyvek suits to its workers. However, Welsbach still failed to provide its employees with the appropriate masks and gloves.

13. Despite the difficult working conditions involved with drilling and hammering in bolts overhead, Schroeder and other members of the crew worked from 11:00p.m. to 7:00a.m. daily, without any break after 12:30a.m. when the crew entered the tunnel.

14. Schroeder continued to reasonably expect that Welsbach would protect Schroeder and the other workers from the horrible working conditions on the job, including the asbestos and metallic break dust.

15. In addition to the possible exposure to asbestos, lead, and metallic dust, the other serious health threat dealt with the putrid, stagnant water pockets we would hit while drilling over head. While drilling we would encounter these pockets of water that would shoot into our faces under pressure and get into our eyes, ears, go down our necks soaking our clothes and onto our hands. Possible exposure to pathogens, and chemicals resulting from the contact with this rancid water was a constant concern of Schroeder's and all the workers. Schroeder raised this concern many times, resulting in verbal threats to himself of job termination if he complained about this to anyone. Schroeder continued to push for full face respirators which would have kept the water out of our eyes. Welsbach refused to provide us with this protection.

16. On Thursday, March 27, 2008, Schroeder made what we thought was a confidential phone call to Mr. Frank Robert, the general foreman on the project, to inform him of some questionable activities of our night foreman which we thought Welsbach needed to be cognizant of as well as mounting safety concerns. As Roberts did not answer his phone, Schroeder left a message, in which he delineated several items, complaints, and then asked Roberts to call him back to discuss the matter more fully.

17. On the morning of Saturday, March 29th, 2008, while Schroeder was out sick, Mr. Reinhardt called Schroeder to inform him that the general foreman, Roberts, was not only extremely upset with Schroeder and the entire crew for calling Roberts and complaining about this employee and again raising safety issues, but that Roberts had played Schroeder's entire phone message, not only to the person I Schroeder had informed on, but to other individuals as well.

18. The act of making the phone call arose out of the frustration the crew felt from being blamed when problems arose attributed directly to the foreman's misconduct and or inability or refusal to carry out his job requirements properly. We also feared for our own jobs if his conduct

4

was allowed to continue as management looked on the problems developing as a result of something the workers were doing.

19. When the general foreman Roberts arrived Saturday morning, March 29, 2008, he was furious with the entire crew as a result of Schroeder's phone call. Roberts threatened to terminate the employment of anyone who contacted the union hall regarding matters related to this job, or who made any phone calls to the company complaining of anything, stating that he had had enough. In addition, he threatened the same action if anyone spoke with Jerry Costaldo, a former Welsbach employee allegedly filing a law suit against Welsbach.

20. When Schroeder arrived at work the next day, Sunday, March 30th, 2008, he was informed that he had been demoted and was no longer a foreman. Schroeder was subjected to a tirade from the foreman for calling the company about his actions and for raising safety issues. He told Schroeder he was lucky to still have a job. Later that night when the crew first boarded the train, our foreman went into another tirade screaming how he felt betrayed, how he couldn't believe that we would do such a thing, how we stabbed him in the back, and repeatedly stating that he was furious for what we had done to him. Schroeder was now subjected daily to a very hostile working environment that would last until his termination roughly forty five days later.

21. Schroeder was demoted and castigated for contacting Welsbach concerning violations of company policy by another employee, and for reporting safety concerns. Schroeder and the entire crew were told that if any employee committed similar acts, contrary to what had been articulated to us by the Vice President of Welsbach, and clearly posted on signage in all Welsbach trailers, we faced retaliation and retribution through demotion and job termination.

22. Foreman, Art M., criticized Schroeder for speaking with Cheddie Brade, the PATH Engineer in Charge on Schroeder's first PATH job and who was later appointed to work as the Engineer in Charge on Schroeder's job with Welsbach. In fact, Art. M., warned Schroeder he would be fired if he spoke to Mr. Brade again regarding any safety issue.

23. On May 13th 2008 Schroeder was warned by foreman Art M., that we was observed speaking with Mr. Brade and that if he continued his job was terminated. The conversation referenced was initiated by Mr. Brade and concerned safety regarding our masks, more specifically the problem we had been having with getting so much water in our faces while we drilled holes overhead, and how concerned the men were about this serious problem.

24. When Schroeder reported for work the next day he was told by the foreman Art M., in front of the entire night crew; that he was being laid off for speaking with the PATH Engineer in Charge, Mr. Brade, the previous night. He handed Schroeder two checks, a customary practice in the Union when someone is laid off. He further stated that the union hall had been contacted regarding the lay off.

25. Welsbach's actions constitute retaliation against Schroeder because Schroeder disclosed and objected to the unsafe working conditions on the job, which conditions Schroeder reasonably believed to be violations of the law, or rule or regulation promulgated pursuant to law and/or that were incompatible with a clear mandate of public policy concerning the public health safety or welfare.

26. As a direct and proximate result of Defendant's actions, Schroeder has and will continue to suffer substantial damages.

**FIRST COUNT**
(New Jersey Conscientious Employee Protection Act)

27. Schroeder repeats and realleges all of the allegations contained in the preceding paragraphs of the complaint as if same were fully set forth at length herein.

28. Welsbach is an "employer" under the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq. (C.E.P.A.).

6

29. Welsbach has violated CEPA by, *inter alia,* NOT posting any CEPA signage on the job site to inform employees of their rights under CEPA, and terminating Schroeder in retaliation for his act of disclosing and objecting with his Union representative and supervisors about the unsafe and hazardous working conditions on the job, which he reasonably believed were in violation of the applicable OSHA safety standards and otherwise illegal and/or incompatible with a clear mandate of public policy concerning the public health, safety and welfare.

30. Welsbach's conduct was willful, wanton, malicious and/or in reckless disregard of Schroeder's rights.

31. As a result of Welsbach's wrongful actions, as aforesaid, Schroeder has and will continue to suffer substantial damages including, but not limited to, emotional distress damages and mental anguish.

WHEREFORE, Plaintiff, Marshall Schroeder, demands judgment against Defendant, Welsbach Electric Corporation as follows:

A. **Reinstatement;**
B. **Compensatory and consequential damages;**
C. **Punitive damages;**
D. **Reasonable attorney's fees;**
E. **Interest;**
F. **Costs of suit; and**
G. **Such other and further relief as the Court deems just and reasonable.**

## SECOND COUNT
(Wrongful Termination in Violation of Public Policy)

32. Schroeder repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if fully set forth at length herein.

7

33. Defendants wrongfully terminated Schroeder because Schroeder voiced his complaint and concerns about the unsafe working conditions on the job with his Union and his Superiors.

34. Said termination was in violation of, *inter alia*, a clear mandate of public policy and was otherwise wrongful.

35. Defendants conduct was willful, wanton, malicious and/or in reckless disregard of Schroeder's rights.

36. As a direct and proximate result of Defendant's wrongful conduct, Schroeder has and will continue to suffer substantial damages including, but not limited to, severe emotional distress and mental anguish.

WHEREFORE, Plaintiff, Marshall Schroeder, demands judgment against Defendant, Welsbach Electric Corporation as follows:

A. **Reinstatement;**
B. **Compensatory and consequential damages;**
C. **Punitive damages;**
D. **Reasonable attorney's fees;**
E. **Interest;**
F. **Costs of suit; and**
G. **Such other and further relief as the Court deems just and reasonable.**

### THIRD COUNT
(Hostile Work Environment- New Jersey Law Against Discrimination)

37. Schroeder repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if fully set forth at length herein.

38. Defendant has subjected Schroeder to a hostile work environment based on his speaking out about legitimate safety concerns on behalf of himself and other workers.

8

39. As a direct and proximate result of Defendant's wrongful conduct, Schroeder has and will continue to suffer substantial damages including, but not limited to, severe emotional distress and mental anguish.

WHEREFORE, Plaintiff, Marshall Schroeder, demands judgment against Defendant, Welsbach Electric Corporation as follows:

A. Reinstatement;
B. Compensatory and consequential damages;
C. Punitive damages;
D. Reasonable attorney's fees;
E. Interest;
F. Costs of suit; and
G. Such other and further relief as the Court deems just and reasonable.

without prejudice

By: *[signature]*

Marshall Schroeder

Dated: ~~May~~ June 15, 2009

9

## CERTIFICATE OF SERVICE

I, Marshall Schroeder, certify that this 15th day of June, 2009, I mailed a true and correct copy of the above and foregoing pleading via certified mail, return receipt requested # **7005 1820 0005 5540 2929** to:

**Welsbach Electric Corporation**
100 Amity Street
Jersey City, NJ. 07304

*without prejudice*

*[signature]*

Marshall S. Schroeder

10